UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| DENNIS C. BOSELEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 3:08-CV-362 |
| ) | (PHILLIPS/GUYTON) |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## **REPORT AND RECOMMENDATION**

This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding the disposition by the District Court of the plaintiff's Motion For Judgment On The Administrative Record [Doc. 10], and the defendant's Motion For Summary Judgment. [Doc. 14]. Plaintiff Dennis C. Boseley seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), and the Appeals Council, the final decision of the defendant Commissioner.

## **BACKGROUND**

Plaintiff was 49 years of age when the ALJ issued his decision in March, 2007, and 50 years of age when the Appeals Council issued its decision in August, 2008 (Tr. 11, 493). He attended high school through the 11th grade, and he has work experience as a truck driver between 1982 and October, 2002 (Tr. 122, 493). He alleges that he has been disabled since October 31,

2002, after sustaining knee injuries and a partial amputation of his left thumb on that date in a motor vehicle accident (Tr. 149).

## MEDICAL AND VOCATIONAL RECORD EVIDENCE

The relevant medical record evidence is summarized as follows:

Following the motor vehicle accident of October 31, 2002, the plaintiff was treated for over a year by Dr. Ronald French. Dr. French treated plaintiff's knees and left thumb. In December 2003, Dr. French found that the plaintiff had reached maximum medical improvement (Tr. 450). Dr. French ordered an FCE (functional capacity evaluation) for the left hand, which he reviewed in January, 2004, finding that plaintiff lacks "full grip" because of "stiffness and the loss of a portion of the left thumb." Dr. French noted that the plaintiff needed to be "evaluated for a return to some type of employment" (Tr. 377).

Plaintiff did have a functional capacity evaluation in January 2004. It revealed high abilities in all lifting tasks, push and pull, right hand carry and walking (Tr. 461-465). Specifically, with regard to his left hand, evaluators found "there has been good recovery, taking into consideration the nature of the injury and reconstructive surgery on the left thumb" (Tr. 462). There was significant progress in strength and range of motion for plaintiff's left hand and fingers (Tr. 462). They noted plaintiff had difficulty with lifting from his waist to head due to decreased strength in his left hand; plaintiff had below average coordination with his left hand, especially when working with small objects, as well decreased grip strength and tip pinch (Tr. 462). They noted that plaintiff "has made significant improvement with grip strength and ROM of left hand to a functional

2

level but there is permanent restriction of the use of left hand when involving heavy lift[ing]." (Tr. 462). They also found he would have some limitations in both knees (Tr. 462).

In April 2004, Dr. French had a follow-up visit with the plaintiff. Dr. French noted that the plaintiff could drive and plaintiff "does have good functional use of the left hand within the stated guidelines" of his work limitations, including lifting no more than fifty pounds (Tr. 376). Dr. French opined that it would be in plaintiff's best interest to try and return to work in some capacity. He concluded that the plaintiff should continue with left hand strengthening exercises (Tr. 376).

In January 2005, Dr. Joseph Johnson, a consultative examiner found some decrease in left grip strength, but that plaintiff could make 90% of a fist (Tr. 415-417). His motor strength was 4/5 in left hand grasping (Tr. 416). Rapid alternating movements in plaintiff's left hand were slightly slow, and his right hand was normal in motion, strength and movement (Tr. 416). Dr. Johnson noted that the plaintiff was right-handed (Tr. 415).

In December 2005, Dr. French provided a medical opinion concerning plaintiff's functional abilities (Tr. 418-420). Dr. French found plaintiff would be absent from work one day per month due to his medical condition (Tr. 420). He concluded plaintiff was able to lift and carry ten pounds frequently and twenty pounds occasionally, sit for eight hours, and stand or walk for four to six hours during an eight-hour workday (Tr. 418).

In November 2006, Dr. French checked the option "yes" on a letter from plaintiff's counsel, indicating that he agreed with the findings contained within Mr. Mark Boatner's vocational assessment report of October 2006 (Tr. 481). Mr. Boatner had summarized Dr. French's findings concerning plaintiff's ability to sit for eight hours per day, and stand or walk for four to six hours

3

per day (Tr. 433). He also considered Dr. French's opinion that plaintiff could frequently lift up to ten pounds, and occasionally lift up to twenty pounds (Tr. 433). Mr. Boatner's findings are discussed below.

On August 25, 2006, Mr. Boatner met with plaintiff for a vocational evaluation and assessment (Tr. 429). Mr. Boatner administered a Purdue Peg Board Test, and opined that plaintiff did not possess the functional dexterity or fingering ability to perform basic assembly jobs, production occupations, maintenance or service occupations. He opined that plaintiff would not be able to perform any type of job requiring reaching, handling and dexterous use of the hands (Tr. 429-441). Mr. Boatner opined that although Dr. French expected plaintiff would have only one absence per month due to his medical condition, this indicated that the plaintiff would "most likely not be able to hold an entry-level unskilled job" (Tr. 434). Mr. Boatner explained that employers with such jobs would have poor tolerance for even that level of absenteeism (Tr. 434). Mr. Boatner concluded that plaintiff retained a poor ability to use his hands and that he could not perform basic assembly, production, maintenance or service occupations.

## **TESTIMONY EVIDENCE**

At the November 2006 hearing, plaintiff testified that he was not under any physicians' treatment at that time, and had not been for two years, since November 2004 (Tr. 496-497). He also testified that he has made no effort to find a job since October, 2002. He gave the reason as pain in his knees and left hand, but he said he did not take prescription pain medication (Tr. 497).

4

Jo Ann Bullard testified as a vocational expert at the administrative hearing after listening to plaintiff's testimony and reviewing the record (Tr. 501-503). The ALJ asked her a series of hypothetical questions concerning whether there were any jobs in the national or regional economy that could be performed by an individual of plaintiff's age, education, and work experience (Tr. 501-502). The second question described the individual as able to do unskilled work at the light level with limitations against more than frequent climbing of stairs and ramps, and no bending from the waist to the floor (Tr. 501). The ALJ further precluded the individual from climbing ladders, ropes, scaffolds, and from kneeling, stooping, crouching or crawling; he was also precluded from heavy gripping with his left upper extremity (Tr. 502).

The vocational expert testified that there was work, other than plaintiff's past work, available in the regional economy of Tennessee for such an individual, and she identified several such jobs (Tr. 502).

## DECISION OF THE ALJ

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2007.

2. The claimant has not engaged in substantial gainful activity since October 31, 2002, the alleged onset date of disability.

3. The claimant has the following severe impairments: amputation of the left thumb and knee pain.

5

4. The claimant does not have an impairment or combination of impairments that meets or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift/carry 10 pounds frequently and 20 pounds occasionally, sit for at least six hours in an eight hour workday, and stand or walk for at least six hours in an eight hour workday. He is unable to climb, bend, stoop, crouch, crawl, or perform constant heavy gripping with the left upper extremity.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on October 18, 1957 and was 45 years old, which is defined as a younger individual, on the alleged disability onset date.

8. The claimant has an eleventh grade education and is able to communicate in English.

9. Transferability of job skills is not an issue in this case.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 31, 2002 through the date of this decision.

(Tr. 29-36).

The Appeals Council granted plaintiff's request for review of the ALJ's decision, and in August, 2008 issued a decision affirming the ALJ's decision and concluding that the plaintiff is not disabled (Tr. 8-11). Therefore, the Appeals Council decision stands as the Commissioner's final decision subject to judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## STANDARD OF REVIEW

If the findings of the Commissioner's final decision are supported by substantial evidence based upon the record as a whole, they are conclusive and must be affirmed. Warner v. Commissioner of Social Security, 375 F.3d 387 (6th Cir. 2004). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Siterlet v. Secretary of Health and Human Services, 823 F.2d 918, 920 (6th Cir. 1987). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the Commissioner or whether the reviewing judge may have decided the case differently. Crisp v. Secretary of Health and Human Services, 790 F.2d 450, 453 n.4 (6th Cir. 1986); and see Dorton v. Heckler, 789 F.2d 363, 367 (6th Cir. 1986) (holding that, in a close case, unless the Court is persuaded that the Secretary's findings are "legally insufficient," they should not be disturbed). The Court may not review the case de novo, resolve conflicts in evidence, or decide questions of credibility. Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

## ANALYSIS

The plaintiff claims that the Commissioner erred in not accepting the restrictions in manual dexterity of the left hand described by his functional capacity evaluation, which included the Purdue Pegboard Test given by Mr. Boatner. In fact, he argues that the Commissioner failed to take said limitations into account. The Commissioner argues that the Boatner findings and opinion were considered by the ALJ and the Appeals Council, which both gave it little weight, since it was not consistent with the opinions of Dr. French, the treating physician, and the other record evidence.

The Court agrees with the Commissioner. The record medical evidence does not support plaintiff's claims. The ALJ granted controlling weight to no less than six opinions by plaintiff's treating physician, that his abilities were consistent with a residual functional capacity for a range of light work with appropriate limitations (Tr. 34). In assessing plaintiff's residual functional capacity, the ALJ also considered his activities of daily living in concluding that plaintiff was able to perform a range of light work that did not require constant heavy gripping, with postural limitations. He found that the demands of plaintiff's activities contradicted the nature and degree of impairment he alleged (Tr. 34). Specifically, the ALJ noted that plaintiff engaged in a wide range of activities, including meal preparation, shopping, cleaning, driving, socializing and going fishing weekly (Tr. 34). The ALJ further considered that, although plaintiff claimed disabling pain, he took no prescription medication (Tr. 34, 161-164).

Plaintiff argues that "two separate objective tests have shown Mr. Boseley's ability to engage in activities requiring bilateral manual dexterity is deeply impaired." He refers to two vocational evaluations. Plaintiff first cites to the January 2004 functional capacity evaluation by a

8

vocational assessor, which concluded plaintiff had coordination with his left upper extremity for between one and five percent of a twelve-hour workday (Tr. 465). The ALJ and the vocational expert contemplated the demands of an eight-hour day in assessing plaintiff's abilities (Tr. 32). The January 2004 functional capacity evaluation also shows that plaintiff was capable of left hand grip strength. Also, the results do not preclude the performance of the jobs identified by the vocational expert.

Second, plaintiff cites to the Purdue Pegboard test in support of his argument that the ALJ and Appeals Council erred in weighing evidence of his manual dexterity limitations. However, the ALJ and the Appeals Council did consider this vocational testing, but gave it little weight.

The ALJ thoroughly considered plaintiff's allegations of total disability, the objective evidence of record, as well as his course of treatment, and ultimately concluded that plaintiff's symptoms, while limiting, did not preclude the performance of a restricted range of light work. The ALJ reasonably determined that plaintiff could perform a significant number of jobs despite his impairments and was therefore not disabled. The vocational expert testified regarding someone of plaintiff's age, education, and past work experience, who could perform a range of unskilled work at the light level with limitations against more than frequent climbing of stairs and ramps, and no bending from the waist to the floor (Tr. 501). The ALJ further precluded the individual from climbing ladders, ropes, scaffolds, and from kneeling, stooping, crouching or crawling (Tr. 502). The ALJ specifically accommodated plaintiff's substantiated limitations concerning his thumb, and included a restriction from heavy gripping with his left upper extremity (Tr. 502).

9

The vocational expert testified that there was work, other than plaintiff's past work, available in the regional economy of Tennessee for such an individual (Tr. 502). Since the ALJ relied on vocational expert testimony in response to a hypothetical question which accurately reflected plaintiff's credible limitations, his finding that Plaintiff was not disabled because he could perform a significant number of jobs in the national economy was supported by substantial evidence.

The ALJ reasonably relied on the vocational expert's testimony to conclude that plaintiff could perform a significant number of jobs, despite the limitations caused by his impairments. Substantial evidence in the record as a whole supports the ALJ's decision that plaintiff was not disabled.

Accordingly, I find that the ALJ properly reviewed and weighed all of the medical source opinions, the objective medical findings, and plaintiff's credibility to determine that he could perform a range of light work. Substantial evidence supports the ALJ's findings and conclusions. Therefore, it is hereby **RECOMMENDED**[1] that the plaintiff's Motion For Judgment On The Administrative Record [Doc. 10] be **DENIED** and that the Commissioner's Motion For Summary Judgment [Doc. 14] be **GRANTED**.

Respectfully submitted,

s/ H. Bruce Guyton
United States Magistrate Judge

---

[1] Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).